UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RALPH DOMINIC HOLMES,

        Plaintiff,

v.

UNKNOWN PYNNONEN et al.,

        Defendants.
_____/

Case No. 2:25-cv-196

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horrocks, Mayo, Duquette, Dums, Minerick, Nurkala, Williams, Wyatt, Wilson, Frantti, Gibson, Perttu, Tatman, and Haapala. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Wertanen, Pynnonen, Holma, Nurmi, Skinnerup, Nyquist, Bakkila, and Wilkins: official capacity claims, Eighth Amendment claims based upon verbal harassment and threats, Eighth Amendment

medical care claims related to injuries other than Plaintiff's dislocated shoulder, and conspiracy claims. The following individual capacity claims remain in the case: Plaintiff's Eighth Amendment excessive force claims against Defendants Wertanen, Pynnonen, and Holma; Eighth Amendment medical care claims related to Plaintiff's dislocated shoulder against Defendants Nurmi, Skinnerup, Nyquist, and Bakkila; and First Amendment retaliation claim against Defendant Wilkins.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following AMF staff in their personal and official capacities: Lieutenant Unknown Pynnonen, Corrections Officer Unknown Holma, Deputy Warden Rebecca Horrocks, Nurse Practitioner Kristine Nyquist, Registered Nurse Laura Nurmi, Grievance Coordinator P. Mayo, Registered Nurse Trudy Duquette, Registered Nurse Gary Bakkila, Assistant Deputy Warden Chester Dums, Warden Terry Wilkins, Inspector/Assistant Deputy Warden Shawn Minerick, Resident Unit Manager Marsha Nurkala, Captain Unknown Wertanen, Sergeant William Williams, Sergeant Unknown Wyatt, Prison Counselor Timothy Wilson, Prison Counselor Logan Frantti, Prison Counselor Unknown Gibson, Resident Unit Manager Thomas Perttu, Registered Nurse Krystal Tatman, Registered Nurse Emily Skinnerup, and Registered Nurse Trisha Haapala. (Compl., ECF No. 1, PageID.2 –5.)

Plaintiff alleges that, on September 5, 2024, "an inmate assaulted staff." (*Id.*, PageID.6.) Defendants Horrocks, Nurkala, Wilson, Frantti, Gibson, Wertanen, and others huddled. (*Id.*) Thereafter, Defendant Wilson approached Plaintiff's cell and said, "Motherf***er you next." (*Id.*)

2

"Minutes later," Defendants Wertanen and Pynnonen told Plaintiff to "cuff up for ad[ministrative] seg[regation]." (*Id.*) Defendant Wertanen placed the handcuffs on Plaintiff so tightly that they "cut off blood circulation," and Defendants Pynnonen and Holma bent Plaintiff at the waist and twisted his arms to drag him from the unit. (*Id.*)

Upon entering the hallway to exit the unit, Defendants Pynnonen and Holma slammed Plaintiff to the ground on his face, knocking him unconscious. (*Id.*) When Plaintiff awoke, both officers were screaming at Plaintiff that they would "kill" him, while punching him in the face, choking his neck, twisting his arms, and stabbing his hip. (*Id.*) Plaintiff was placed in a restraint chair and escorted to administrative segregation. (*Id.*)

Plaintiff requested medical attention from Defendant Nurmi; however, Defendant Nurmi denied Plaintiff's request for treatment, telling Plaintiff that he "deserved to die." (*Id.*)

On September 6, 2024, "staff" mocked Plaintiff's injuries, including a "left eye contusion, black right eye, swollen cheekbones, scarred head, cuts on [his] wrist, punctured left hip & dislocated right shoulder." (*Id.*) Defendant Nurmi again refused Plaintiff medical treatment, telling Plaintiff that he "got f***ed up real good." (*Id.*)

On September 7, 2024, Defendant Skinnerup "witnessed [Plaintiff's] injuries" but refused to call him out. (*Id.*) Plaintiff also alleges that Defendant Bakkila assessed his hunger strike and documented his bruises but failed to photograph them. (*Id.*)

On September 9, 2024, Defendants Horrocks and Dums laughed at Plaintiff's bruises, stating, "I hope it hurt, that should teach you a lesson." (*Id.*) And Defendant Nyquist denied Plaintiff medical treatment on September 10, 2024, saying that Plaintiff "got what [he] deserved." (*Id.*) Plaintiff states that "medical staff" never treated his injuries. (*Id.*)

Although Plaintiff filed multiple grievances, Defendant Mayo threw them out and placed Plaintiff on "modified access status." (*Id.*) According to MDOC policy, prisoners on modified access are "able to obtain grievance forms only through the Step I Grievance Coordinator." MDOC PD 03.02.130, ¶ SS.[1] A grievance form is only provided "if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy." *Id.*

Plaintiff also spoke to Defendant Wilkins on "numerous occasions;" however, Defendant Wilkins "threatened to have [Plaintiff] physically assaulted by staff." (*Id.*) Plaintiff further claims that he was "harassed and threatened" by Defendants Wertanen, Williams, Wyatt, Nurkala, Perttu, Franti, Wilson, Dums, Minerick, and Horrocks, and "officers." (*Id.*)

Upon transfer to Ionia Correctional Facility, Plaintiff received medical and mental health treatment. (*Id.*) He continues to receive treatment at MBP. (*Id.*)

Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[1] The Court takes judicial notice of the MDOC policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority").

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews*

*v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (Compl., ECF No. 1, PageID. 7.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The

Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

In the present action, Plaintiff's allegations against the named Defendants relate solely to past harm, not future risk of harm. Therefore, his allegations do not seek relief properly characterized as prospective.

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility typically moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Plaintiff is no longer confined at AMF, which is where he avers that the named Defendants are employed. Thus, Plaintiff's transfer moots his requests for declaratory and injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim

### B.    Claims Against Defendants Duquette, Tatman, and Haapala

Plaintiff lists Defendants Duquette, Tatman, and Haapala in the caption of his complaint but does not mention these Defendants within the factual allegations of his complaint or otherwise identify any actions that may be attributed to them.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff does not set forth any factual allegations to describe what Defendants Duquette, Tatman, and Haapala personally did to violate Plaintiff's constitutional rights. While Plaintiff makes many of his allegations against "medical staff," Plaintiff's reference to "medical staff" generally is insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

Thus, Plaintiff's claims against Defendants Duquette, Tatman, and Haapala fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C.    Eighth Amendment Excessive Force and Failure to Intervene Claims

Plaintiff alleges that Defendants Wertanen, Pynnonen, and Holma used excessive force against Plaintiff on September 5, 2024. (Compl., ECF No. 1, PageID.6.) Plaintiff also alleges that, minutes before Defendant Wertanen and Pynnonen arrived to place Plaintiff in handcuffs and take him to administrative segregation, Defendant Wilson approached Plaintiff's cell and said, "Motherf***er you next." (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346. However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759

9

F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). Furthermore, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8

10

(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court will allow Plaintiff to proceed with his Eighth Amendment claims of excessive force against Defendants Wertanen, Pynnonen, and Holma. However, Plaintiff's complaint does not contain any well-pleaded factual allegations that would suggest that Defendant Wilson was aware that Defendants Wertanen, Pynnonen, and Holma would use excessive force against Plaintiff or that Defendant Wilson was present during their use of force such that it could be said that he could be liable for failing to intervene. Accordingly, any Eighth Amendment claim against Defendant Wilson will be dismissed.

### D.     Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants Nurmi, Skinnerup, and Nyquist refused to provide Plaintiff with medical attention for his injuries, which included a "left eye contusion, black right eye, swollen cheekbones, scarred head, cuts on [his] wrist, punctured left hip & dislocated right shoulder." (Compl., ECF No. 1, PageID.6.) Plaintiff also alleges that Defendant Bakkila assessed his hunger strike and documented his bruises but failed to photograph them. (*Id.*)

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the

objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

12

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Superficial physical conditions, such as minor "cuts, bruising, and swelling," do not rise to the level of serious medical needs requiring medical treatment. *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013). Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Therefore, Plaintiff fails to satisfy the objective component of the Eighth Amendment standard with respect to these injuries.

Moreover, Plaintiff faults Defendant Bakkila for failing to photograph Plaintiff's bruises. (Compl., ECF No. 1, PageID.6.) Not only does Plaintiff's complaint lack any facts that would suggest that medical care was required for Plaintiff's bruises, but he fails to plausibly suggest how failing to photograph an injury amounts to a lack of medical care or deliberate indifference to a substantial risk of serious harm.

However, Plaintiff also alleges that he suffered from a dislocated shoulder, which required further treatment and physical therapy. (Compl., ECF No. 1, PageID.6.) The Court finds that Plaintiff has pleaded sufficient facts to satisfy the objective standard as to this injury. Taking Plaintiff's allegations as true—that Defendants Nurmi, Skinnerup, Nyquist, and Bakkila saw

Plaintiff's injuries, including his dislocated shoulder, and refused to provide Plaintiff with medical attention—the Court will allow Plaintiff to proceed with his Eighth Amendment medical care claim against these Defendants as it relates to his shoulder injury.

E.    **Eighth Amendment Verbal Harassment Claims**

Plaintiff alleges that Defendants Horrocks and Dums laughed at Plaintiff's injuries, that Defendant Wilkins "threatened to have [Plaintiff] physically assaulted by staff," and he was "harassed and threatened" by Defendants Wertanen, Williams, Wyatt, Nurkala, Perttu, Franti, Wilson, Dums, Minerick, and Horrocks. (Compl., ECF No. 1, PageID.6.) These allegations do not state an Eighth Amendment claim.

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."). Therefore, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendants Horrocks and Dums for laughing at Plaintiff's injuries and against Defendants

Wertanen, Williams, Wyatt, Nurkala, Perttu, Franti, Wilson, Dums, Minerick, and Horrocks for their unidentified actions that Plaintiff describes as "threat[s]" and "harass[ment]."

Plaintiff specifically alleges that Defendant Wilkins threatened to have staff physically assault Plaintiff. However, this claim fares no better. The Sixth Circuit recently addressed, as a matter of first impression, whether "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threats, constitute conduct so objectively serious as to" violate the Eighth Amendment. *See Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020). In *Small*, the plaintiff alleged that the officer had "brandished a knife, threatened to kill Small, and motioned in a manner suggesting how [he] would use the knife to kill Small." *Id.* at 540. The Sixth Circuit held that an inmate sets forth a plausible Eighth Amendment claim only when repeated verbal threats to the inmate's life were combined with "concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Id.* at 541 (citing cases for the proposition that "'objectively credible' death threats that cause a prisoner to fear for his life violate the Eighth Amendment").

Here, however, Plaintiff has not set forth any facts suggesting that Defendant Wilkins threat was repeated or that his threat was combined with concrete steps to make it credible. Accordingly, Plaintiff's allegation that Defendant Wilkins "threatened to have [Plaintiff] physically assaulted by staff" does not rise to the level of the threats at issue in *Small*.

Accordingly, for the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment claims premised upon verbal harassment and threats.

### F.     First Amendment Retaliation Claim

In discussing his requests for medical treatment, Plaintiff alleges that he spoke to Defendant Wilkins on "numerous occasions" and Defendant Wilkins "threatened to have

15

[Plaintiff] physically assaulted by staff." (Compl., ECF No. 1, PageID.6.) The Court will construe this allegation as raising a claim of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, at this early stage of the proceedings, the Court will assume without deciding that Plaintiff engaged in protected activity for purposes of the first element of a retaliation claim and will allow Plaintiff to proceed with his claim of First Amendment retaliation against Defendant Wilkins.

G.   **Claims Related to Plaintiff's Use of the Grievance Process**

Plaintiff alleges that Defendant Mayo threw out Plaintiff's grievances and, later, placed Plaintiff on modified access status. These allegations fail to state a claim for violation of Plaintiff's constitutional rights.

First, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir.

16

2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendant Mayo did not deprive Plaintiff of due process.

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Third, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by

17

the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Fourth, to the extent that Plaintiff seeks to bring a claim of First Amendment retaliation based upon Defendant Mayo's action in placing Plaintiff on modified access, the Sixth Circuit has held that "that placement on modified access status does not constitute an adverse action when the protected activity was filing administrative grievances." *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)

Finally, the Court notes that the Sixth Circuit has held that modified access to the grievance process does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). Rather, it requires the prisoner to obtain permission from the grievance coordinator to file a grievance. *Id.* Plaintiff does not allege that he was ever denied the opportunity to file a meritorious grievance.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims against Defendant Mayo related to Plaintiff's use of the grievance process.

### H.   Conspiracy Claims

Plaintiff alleges that, prior to the use of force by Defendants Wertanen, Pynnonen, and Holma, Defendants Horrocks, Nurkala, Wilson, Frantti, Gibson, and others "huddled in conspiracy." (Compl., ECF No. 1, PageID.6.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with

18

particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez* 826 F.2d at 1538.

Here, Plaintiff does not facts that would suggest that any "agreement" or "plan" existed between Defendants prior to the alleged use of force. (*See* Compl., ECF No. 1, PageID.6.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff appears to rely entirely on an attenuated inference of a conspiracy from the fact that Defendants Horrocks, Nurkala, Wilson, Frantti, Gibson, Wertanen, and others "huddled." However, the mere fact that these Defendants gathered in a huddle following an assault on staff or that they had a discussion before Plaintiff was to be moved to administrative segregation, does not indicate a conspiracy to violate Plaintiff's constitutional rights.

Plaintiff also alleges that Defendants Nurmi, Skinnerup, and Nyquist each, individually, denied Plaintiff medical treatment. However, as the United States Supreme Court has held, such allegations, even if hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis.* Having conducted the review required by the PLRA, the Court determines that Defendants Horrocks, Mayo, Duquette, Dums, Minerick, Nurkala, Williams, Wyatt, Wilson, Frantti, Gibson, Perttu, Tatman, and Haapala will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Wertanen, Pynnonen, Holma, Nurmi, Skinnerup, Nyquist, Bakkila, and Wilkins: official capacity claims, Eighth Amendment claims based upon verbal harassment and threats, Eighth Amendment medical care claims related to injuries other than Plaintiff's dislocated shoulder, and conspiracy claims. The following individual capacity claims remain in the case: Plaintiff's Eighth Amendment excessive force claims against Defendants Wertanen, Pynnonen, and Holma; Eighth Amendment medical care claims related to Plaintiff's dislocated shoulder against Defendants Nurmi, Skinnerup, Nyquist, and Bakkila; and First Amendment retaliation claim against Defendant Wilkins.

An order consistent with this opinion will be entered.

Dated:   November 3, 2025          /s/ Robert J. Jonker
                                   Robert J. Jonker
                                   United States District Judge